Lois A. WEIRAUCH, Plaintiff,

v.

SPRINT RETIREMENT PENSION PLAN, et al., Defendant.

No. 3:01 CV 7104.

United States District Court,
N.D. Ohio,
Western Division.

Jan. 16, 2002.

James A. Sulewski, Shindler, Neff, Holmes & Schlageter, Toledo, OH, for Plaintiff.

Gregory V. Mersol, Baker & Hostetler, Michelle Pierce Stronczer, Baker & Hostetler, Cleveland, OH, for Defendant.

## ORDER

CARR, District Judge.

Plaintiff Lois A. Weirauch brings this action to recover survivor benefits under an employee benefit plan. This court has jurisdiction pursuant to 29 U.S.C. § 1132(e)(1). Pending are defendants' motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) and for summary judgment pursuant to Fed.R.Civ.P. 56(b). Pending also is plaintiff's cross motion for summary judgment. For the following reasons, defendants' motion for judgment on the pleadings shall be granted, defendants' motion for summary judgment shall be granted, and plaintiff's motion for summary judgment shall be denied.

## BACKGROUND

Sprint Corporation ("Sprint") adopted its Sprint Retirement Pension Plan ("Plan") effective on January 1, 1986.[1]

Plaintiff is the widow of Lawrence P. Weirauch, a participant in the Plan.[2] Mr. Weirauch suffered an occupational injury

---

1. This Company subsequently was involved in several mergers, but none affected the pension plan at issue in this case.

2. Lawrence Weirauch was an employee of United Telephone Company of Ohio, a wholly-owned subsidiary of Sprint.

and received $430.42 per week in temporary disability benefits beginning on December 6, 1992. He also received supplemental payments consisting of the difference between his regular wages and the workers' compensation benefit. Following his injury, Mr. Weirauch's medical and life insurance coverage continued for one year as though he was an active employee.

On November 26, 1993, Sal Micelli, manager of workers' compensation for Mr. Weirauch's employer, advised Mr. Weirauch that his supplemental payments would expire on December 6, 1993, and that he would need to make arrangements for further medical and life insurance benefits. Micelli also informed Mr. Weirauch that he might be entitled to retirement benefits and provided estimates of these benefits. Micelli stated that the workers' compensation payments would be offset against his pension benefits.

On January 4, 1994, Plan agent Cathy Smith sent interoffice correspondence to Mr. Weirauch informing him that, though his retirement would begin on January 1, 1994, a request would be submitted to reclassify his retirement under the Plan's disability provisions.

On February 11, 1994, Mr. Weirauch signed an application for special early retirement and elected a form of distribution under the Plan. He agreed "to receive [his] pension as a lifetime annuity, whereby no Plan benefit will be payable after [his] death." (Doc. 1 at ¶ 16). Mr. Weirauch chose not to receive his pension as a 50% spouse joint-survivor benefit. Plaintiff consented to her husband's election by signing the election form.

On May 13, 1994, Randall T. Parker wrote to Mr. Weirauch and informed him that his application for retirement from active service was approved retroactively to January 1, 1994. Parker also informed Mr. Weirauch that his retirement payment would be reduced by any workers' compensation benefits. The letter also stated that because the weekly workers' compensation benefit of $430.42 exceeded the amount of his retirement benefit, he would not receive a Plan benefit at that time.

After May 13, 1994, Mr. Weirauch received notice from the Social Security Administration that he was entitled to benefits beginning in May of 1993. Mr. Weirauch died on August 29, 1996, without receiving any benefits under the Plan.

Plaintiff alleges breach of contract and breach of duty of good faith and fair dealing. Plaintiff seeks relief enjoining defendants from denial of plaintiff's allowance, a declaration that plaintiff's rights are vested and nonforfeitable or awarding payments due, awarding plaintiff prejudgment interest from September 1, 1996, until the date of judgment, awarding attorney's fees and costs, and ordering defendants to pay all benefits due.

## DISCUSSION

### I. State Claims

Plaintiff's complaint states several state claims, including breach of contract, breach of duty of good faith and fair dealing, and a request for declaratory relief. Defendants argue they are entitled to judgment on the pleadings pursuant to Rule 12(c) because these claims are preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

Plaintiff's brief does not oppose this contention and states, "Plaintiff agrees with the Defendants that any claim founded only on state law would be preempted by the Employee Retirement Income Security Act." (Doc. 29 at 1).

Defendants' motion for judgment on the pleadings as to plaintiff's state claims shall be, therefore, granted.

## II. ERISA

Plaintiff claims she is entitled to survivor benefits under the Plan. Plaintiff claims that her consent waiving her survivor benefits should not be enforced because the waiver is invalid.

### A. Standard of Review

The parties dispute the appropriate standard of review for this ERISA claim. Defendants contend that I must use an abuse of discretion standard of review. Plaintiff claims I must use a de novo standard of review.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." The Sixth Circuit has interpreted this holding to mean that when a plan clearly delegates discretion to administrators to determine eligibility or the meaning of the plan's provisions, a district court must review the administrators' decision under the "arbitrary and capricious" standard of review. *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 710 (6th Cir.2000) (citing *Wells v. United States Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1248 (6th Cir.1991)).

Plaintiff contends, "The Supreme Court held that a Court reviewing Section 1132(a)(1)(B) ERISA claims should apply a De Novo standard unless the trustee has been given power to construe disputed or doubtful terms.... Initial inquiry, thus, must focus on whether relevant language of the Plan is ambiguous." (Doc. 30 at 6) (citation omitted).

Plaintiff misconstrues *Firestone*. *Firestone* makes no distinction between a plan that has ambiguous or unambiguous terms. The only distinction made by *Firestone* is whether the plan clearly delegates discretion to administrators or whether the plan does not delegate discretion. The plain language of *Firestone* requires a de novo standard of review if, and only if, the plan does not delegate to plan administrators the "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115, 109 S.Ct. 948.

■ In § 10.5, the Plan provides:

The Retirement Benefit Committee shall have the *sole discretion* to make decisions and take any action with respect to questions arising in connection with the Plan, including but not limited to the construction and interpretation of the Plan and the Trust Agreement and the determination of eligibility for benefits under the Plan. All such action shall be final and binding upon all Members and Beneficiaries.

(Weirauch Dep. Ex. 3 at 71) (emphasis supplied).

The Plan thus clearly designates to the administrators the discretion to interpret the Plan and to determine eligibility.

■ I must, therefore, apply the "arbitrary and capricious" standard of review to the denial of benefits in this case. " 'The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.' " *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir.1989) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir.1985)).

## B. Denial of Benefits

Plaintiff contends that her waiver of survivorship rights was not valid, defendants did not act reasonably in relying on the waiver, and she is entitled to survivorship benefits. Plaintiff argues that the waiver is invalid because: 1) it did not comply with the Plan's terms; and 2) it was not made knowingly.

Defendant argues: 1) the waiver is valid; 2) Sprint reasonably relied on the waiver; and 3) plaintiff lacks standing. Because I agree with defendants' initial arguments, I decline to address whether plaintiff has standing.

### 1. Waiver Compliance with Plan Requirements

■ Plaintiff argues the waiver did not comply with the Plan's requirements because it was not timely. Plaintiff contends that her waiver should have been made during the ninety day period before the starting date of her husband's annuity. Because the starting date was determined retroactively to be January 1, 1994, and plaintiff signed her waiver on February 11, 1994, plaintiff contends the waiver was not timely and thus under the Plan is invalid.

Plaintiff points to § 7.7 of the Plan, which provides:

A Member who is married on his or her Annuity Starting Date shall receive distribution of his or her Vested Interest in the form of a Qualified Joint and Survivor Annuity, unless the Member has previously waived his or her right to receive distribution of benefits in this form. *The waiver must be executed and consented to* by the Member's spouse in accordance with Section 7.8 *during the 90–day period ending on the Member's Annuity Starting Date* but not earlier than 30 days after the Member receives notice of his or her right to waive his or her Qualified Joint and Survivor annuity or to receive a distribution under Section 7.5, unless the Member affirmative-

ly elects a distribution prior to the expiration of the 30 day period.

(Weirauch Dep. Ex. 3 at 61) (emphasis supplied).

Defendants contend the waiver is valid. Defendants explain:

If the Plan had refused Mr. Weirauch's request to grant his retirement application retroactive to January 1, 1994, his annuity starting date would have been after February 11, 1994, the date of the waiver/consent. Instead, the Plan allowed the retroactive retirement date to protect the Weirauchs from a gap in health insurance coverage.

(Doc. 37 at 6).

Defendants argue that the annuity starting date was made retroactive for the benefit of plaintiff and Mr. Weirauch—so they would receive uninterrupted paid health care coverage. Defendants also argue that § 7.7 does not invalidate waivers dated after the annuity starting date. I agree.

The plain language of § 7.7 does not invalidate waivers that are executed after the annuity starting date. As Defendants point out, the focus of § 7.7 is the timing of the member's election, not plaintiff's consent to the election. The plain language of § 7.7 does not invalidate plaintiff's waiver.

### 2. Waiver Knowledge Requirement

■ Plaintiff contends the waiver is invalid because she was not provided with sufficient information to make informed consent. Plaintiff states:

Defendant could not advise Mr. Weirauch when, if at all, any payment would be made under the Sprint Plan as the offset for the workers' compensation payments he received exceeded the Plan benefits. The Defendant Plan could only tell him that the workers' compensation benefits would continue indefinitely.

Weirauch ... indicat[ed] that to her this was an election which was to take effect if the workers' compensation payments ended.... As she stated "I always thought the pension would be there." (Doc. 30 at 10–11) (citation omitted).

According to the plaintiff, "requiring an election of benefits, when no benefits were going to be paid at the time, is ... misleading .... Absent information on when benefits would actually be paid from the Plan, the Weirauchs could not make an informed decision." (Doc. 38 at 7).

Defendants respond:
"Sprint was not required to accurately predict when, if ever, Mr. Weirauch's workers' compensation benefits would end. Just as Sprint had no way of knowing when Mr. Weirauch would die and thus whether it was better for the Weirauchs to select joint and survivor or a single life annuity form of payment, it had no way of knowing when, if ever, Mr. Weirauch would be ineligible for workers' compensation benefits."
(Doc. 37 at 11).

Defendants argue they did not mislead plaintiff because they informed the Weirauchs of the truth—Mr. Weirauch would receive workers' compensation benefits indefinitely. I agree.

Plaintiff relies on *Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154 (6th Cir.1988), for the proposition that plan administrators may not mislead participants and the Weirauchs' election of benefits was misleading because ·no benefits were payable as of the time of the election. *Berlin* stands for the proposition that plan administrators must be careful to avoid misleading participants. *Berlin,* however, does

not require plan administrators to predict the future and inform participants of events of which plan administrators have no control.

Defendants actions conformed with *Berlin.* Defendants told the Weirauchs of exactly what defendants knew—Mr. Weirauch's workers' compensation benefits would continue indefinitely. No more was required of defendants. Because plaintiff knew of the indefinite nature of Mr. Weirauch's workers' compensation benefits, she had sufficient information to make an informed waiver. The waiver is not invalid for lack of knowledge.

### 3. Use of ERISA for Guidance on the Appropriate Correction Method

■ All parties agree that no Plan terms squarely address the specified circumstances under which plaintiff's waiver was executed and obtained. Sprint, therefore, looked to ERISA principles to interpret the Plan and determine plaintiff's claim. Sprint specifically relied on the Internal Revenue Service's Employee Plans Compliance Resolution System. The pertinent provision provides, "The permitted correction method [for untimely or missing consents] is to give each affected participant a choice between providing informed consent for the distribution actually made or receiving a qualified joint and survivor annuity." [3] Rev. Proc.2000–16, 2000–6 I.R.B.App. A at .07.

Defendants complied with this provision because at the time of the waiver, February 11, 1994, plaintiff had the opportunity to choose between providing informed consent to her husband's election or receiving a qualified joint and survivor annuity. Sprint's use and interpretation of the

---

3. Plaintiff contends Sprint should not have relied on this provision because it was issued six years after plaintiff executed her waiver. Plaintiff, however, provides no authority for the proposition that an administrator may not rely on provisions issued subsequent to a waiver when deciding a claim for benefits. Sprint's application of the ERISA provision to plaintiff's claim was reasonable.

ERISA provision was reasonable because the Plan did not address squarely the circumstances of plaintiff's claim.

**4. Reasonable Reliance on the Waiver**

ERISA provides, "[I]f a plan fiduciary acts in accordance with [the fiduciary requirements of ERISA] in . . . relying on a consent . . . then such consent . . . shall be treated as valid for purposes of discharging the plan from liability to the extent of payments made pursuant to such Act." 29 U.S.C. § 1055(c)(6).

The waiver was valid facially because it complied with Plan requirements, plaintiff possessed the required knowledge, and Sprint correctly followed ERISA provisions under circumstances where the Plan did not address squarely plaintiff's claim.

■ Because the waiver was valid facially, Sprint relied reasonably on it. "[I]f the plan administrator receives a notarized spousal consent, valid on its face, which the plan administrator has no reason to believe is invalid, the plan would certainly be allowed to rely on the consent even if it is, in fact, invalid." *Vilas v. Lyons,* 702 F.Supp. 555, 559 (D.Md.1988) (citing Sen. Rep. No. 575, 98 Cong.2d Sess., *reprinted in* U.S.Code Cong. & Admin. News 2560).

Defendants' motion for summary judgment shall be, therefore, granted. Plaintiff's motion for summary judgment shall be denied.

### CONCLUSION

It is, therefore,

**ORDERED THAT**

1. Defendants' motion for judgment on the pleadings be, and hereby is, granted;

2. Defendants' motion for summary judgment be, and hereby is, granted; and

3. Plaintiff's motion for summary judgment be, and hereby is, denied.

**So ordered.**